No. 6438.

SUCCESSION OF H. D. COCHRANE.

The clause of a will by which the testator gives a sum of money to a minor, and
directs that the sum shall be invested so as to yield a revenue until the legatee's
majority, does not involve a *substitution*.

The devise of a certain sum to a minor, and "in the event of her death," to another,
is a valid disposition, and not a prohibited substitution.

Where the clause of a will 'is susceptible of two constructions that one will be
adopted which gives effect to, rather than'that which avoids the clause.

A naked trust, to be executed immediately, as where furniture ,is devised to a
mother, for the benefit of her minor child, is not a *fidei commissum*.

APPEAL from the Parish Court, parish of Jefferson.   *Hyman*, J.

*George H. Braughn* and *A. J. Villeré*, for. opponent.

*W. B. Lancaster*, for the succession.

ON MOTION TO DISMISS.

The opinion of the court was delivered by

HOWELL, J.   A motion is made to dismiss this appeal "on the ground
that Mrs. Margaret Kellogg, sister of the deceased and one of his residu-
ary legatees, a necessary party to the appeal, has not been cited to an-
swer said appeal or even made a party appellee herein."

The judgment appealed from was rendered on an opposition to an
account filed by the executors, sustaining the opposition of Mrs. Ech-
inger, tutrix, to one item and rejecting it as to another.   The latter item
is in favor of said Mrs. Kellogg and her co-legatee, one of the executors,
and it is contended by the appellee that Mrs. Kellogg is a necessary
party to the appeal, while the appellants (the executors) contend that
Mrs. Kellogg was not a party to the proceedings in the opposition in the
court below, and can not be made a party appellee.   They say she was
not a party because, being a legatee, she was not specially notified of the
filing of the account and tableau of distribution and the ordinary pub-
lication to creditors does not make her a party.

However this may be, it seems clear to us that all the parties who were
before the lower court on the trial of the opposition are before us as ap-
pellants or appellees, and we can dispose of the appeal as to them.   How
they may be severally affected by our action can only be determined
when we come to pass on the merits.   We do not think the ground
urged is sufficient to dismiss the appeal.

Motion refused.

ON THE MERITS.

The opinion of the court was delivered by

MARR, J.   We are called up >n in this case to construe two clauses in
the will of Hugh D. Cochrane, which are as follows:

Succession of Cochrane.

"I give to the little daughter of Catherine Echinger five thousand dollars, say $5000, the said sum to be invested in such a way that she may receive the interest annually and the principal at her becoming of age. In the event of her death, the said donation to go to the daughter of my niece, maiden name Margaret Kellogg, now living in Evansville, Indiana.

"I give to Catherine Echinger four thousand dollars, say $4000. I also give to her for the benefit of her little daughter all the furniture in my bed-room and bath-room, and all curtains which belong to the set of furniture, two blankets, six linen and six cotton sheets, and everything appertaining to the set of furniture in the room; also one of my dinner services, the decorated set without the monogram."

The executors filed an account and tableau in which they proposed to distribute the effects of the succession as if both these clauses were null. Mrs. Catherine Echinger, as natural tutrix of her minor daughter, Margaret Lenora Echinger, opposed this, and claimed the legacies in favor of her child.

The judgment of the court below recognized the first clause as valid, and ordered the executors to invest the five thousand dollars in the name and for account of the legatee, in such a manner that she shall, during her minority, receive yearly the revenues and the principal at her majority.

The judge considered the second clause a *fidei commissum*, and he adjudged and decreed it to be void and of no effect.

The executors appealed, and Mrs. Echinger, appellee, in her capacity as natural tutrix, answered the appeal, praying for the confirmation of that part of the judgment which recognized the validity of the first clause, and that so much of the judgment as declared the nullity of the second clause be annulled, and that there be judgment declaring the disposition to be valid, and ordering the executors to execute it.

First—It is contended on the part of the executors that the first clause is a double prohibited substitution, first, because the property is to be preserved and returned to the daughter of C. Echinger; second, because it is to be preserved and returned to Miss Kellogg.

No one is charged by the testator to keep and preserve this sum, the five thousand dollars, until the majority of the legatee, and then to return it to her. Whatever the title may be which by this will vests in the little daughter of Catherine Echinger, it vested *eo instanti* on the death of the testator. "I give to the little daughter of Catherine Echinger five thousand dollars." That which follows, "the said sum to be invested in such a way that she may receive the interest annually and the principal at her becoming of age," does not postpone her title to her majority. The testator simply points out the mode in which this fund shall

be administered during the minority, and that which he directs to be done is precisely what the tutor of the minor is required by law to do. He must invest the funds of the minor coming into his hands, and he can not encroach upon the capital, even for the maintenance and education of the minor, without the authorization of the judge on the advice of a family meeting.

The plain meaning of this clause is that the five thousand dollars shall become the property of the child at once. If the disposition had stopped there, the tutrix would have demanded this sum of the executors, and she would have administered it, necessarily, during the minority, because of the incapacity of the child. The testator preferred to have the investment made by his executors. This does not prolong the term of their administration. They are not to have the control of the money except to invest it in such a manner as that the legatee may receive the interest annually. When they make the investment it will be in the name and for the benefit of the child, and the thing in which they make the investment will be the property of the child, as the money invested was, and will be in the custody of her tutrix, who will receive the interest for the child during her minority.

We find no semblance of a substitution in this. It has long been settled that the prohibited substitution is that disposition by which the first taker is charged to keep and preserve the thing during his life, and to transmit it to another at his death. If the money had been given to some one charged to keep it until the majority of the child, and then to give it to her, this might have been a prohibited *fidei commissum;* but it would not have been a substitution. The gift is to the child directly, absolutely, and there is no limitation or restriction of the power of disposal, which belongs to her as owner, beyond that which the law itself imposes during and by reason of her minority.

We interpret that part of this clause which relates to Miss Kellogg as a vulgar substitution; " a disposition by which a third person is called to take the legacy in case the legatee does not take it;" which the Civil Code, article 1521 (1508) declares to be valid.

Article 1714 (1706), of the Civil Code, declares that "a disposition must be understood in the sense in which it can have effect rather than that in which it can have none;" and this is in accordance with the civil law.

Treating " *de rebus dubiis,*" the Digest, lib. 34, tit. v., l. 12, Julianus says: " *Quotiens in actionibus, aut exceptionibus ambigua oratio est, commodissimum est id accipi quo res, de qua agitur, magis valeat quam pereat;*" and this is a necessary rule of interpretation.

If the disposition in question were equally susceptible of either of two interpretations, the one making it lawful and valid, the other making it

unlawful and void, the courts would be compelled to adopt that interpretation which would make it lawful and valid, rather than that which would make it unlawful and of no effect; "*ut res magis valeat quam pereat.*"

"In the event of her death." When? We must presume that the testator knew the law, and that he did not intend to violate it or to make nugatory any part of this last solemn act by which he was disposing of his property and effects preparatory to his death. He knew that the legatee would die in the course of nature, as he was about to die. He did not contemplate her death, which he knew would certainly occur, as a mere contingency which might or might not happen. When he used the words "in the event of her death," he had in his mind, not simply that event which is certain with respect to all mankind but an event which was uncertain only as to the period at which it might occur. If he had said: "In the event of her death before the age of majority the said sum is to go to the daughter of my niece," etc., the disposition would have been a substitution. But if he had said: "In the event of her death before my death, the said sum is to go," etc., this would have been a vulgar substitution, a perfectly lawful and valid disposition.

When the testator says "in the event of her death," he evidently means to connect that event with a period of time well fixed in his own mind, as a contingency for which he desired to provide, and had the power to provide. He has failed to express that period; and the courts are compelled to supply this omission. In fixing the period which we must suppose was in the mind of the testator, it is as easy, as reasonable, as natural to say, that he means "in the event of her death before my death," as to say, "in the event of her death before majority," or at any time, happen when it may.

In the first hypothesis, it was perfectly in the power of the testator to provide for the contingency. In the event of her death before he died, the legacy to her would fail, and in that event he desired, and so provided, that it should go to the daughter of his niece.

In the second hypothesis, it would not have been within the power of the testator to provide for the contingency. If the legacy to the little daughter of Catherine Echinger had been coupled with the condition that in the event of her death before the age of majority, or at any time whatever, it was to go to the daughter of his niece, the whole disposition would have failed—would have been void; and neither of these objects of his regard would have taken or been benefited by the intended benefaction.

The testator was at Liverpool, and Mrs. Echinger and her little daughter were in the parish of Jefferson, in the State of Louisiana. He did not know, he could not have known, that the child was actually living at the time he was making his will, much less that she would survive him.

He desired to give her five thousand dollars; but he did not wish to secure this sum undisposed of in the event of the death of the child during his life, and the consequent failure of the legacy to her. He therefore provided, by vulgar substitution, that this sum should in that event go to the daughter of his niece.

The law requires us to give effect to this disposition if it can be done. In order to do this we have but to assume that the testator did not intend to make a disposition in violation of a prohibitory law, and therefore of no effect; and that he simply intended to name a person to take as legatee in the event that the little daughter of Catherine Echinger should not be living at the opening of his succession by his death.

Second—It is contended also, that the second clause is a trust; and that all trusts are *fidei commissa*, and are prohibited.

The prohibition of the Code is leveled at these fiduciary bequests, *fidei commissa*, by which the legatee is used merely as the means of transmitting to one incapable the property which is given to the legatee only for that purpose; and at the tenures by which property is tied up for a length of time in the hands of individuals, and placed out of commerce. It never was the object of the Code "to abolish *naked trusts*, uncoupled with an interest, which are to be executed immediately." Mathusin vs. Livaudais, 5 N. S., 302; succession of Franklin, 7 An.; succession of McDonogh, 8 An.; Henderson vs. Rost, 5 An.

The testator had given five thousand dollars to the daughter of Catherine Echinger. He had not chosen to allow this money to fall into the hands of the mother, the natural tutrix, because he desired it to yield an annual income for the maintenance and education of the child; and he had more confidence in the capacity of the executors to make this investment in such a manner as to secure his object, than in that of the mother, necessarily of less experience in such matters than the persons to whom he had intrusted the execution of his will. But the special legacy of the furniture, etc., was of much less importance. If he had given these movables to the child directly, they would necessarily have fallen into the hands of her mother, her tutrix, and when he gave them to the mother for the benefit of the child, the effect was precisely the same as if he had given them directly to the child. In other words, he imposed upon the mother, with respect to these movables, the same obligations as would have devolved upon the executors if he had given them directly to the child. In the language of the court in Mathusin vs. Livaudais, 5 N. S., 303:

"The obligations imposed on the legatee by the will of the testator in this case can not be distinguished from that of an executor, except in the name; and it is the duty of the court to look to things rather than to words."

Succession of Cochrane.

It is the duty of the mother to execute this trust immediately.  We do not see how any rule of law or of policy is contravened by this disposition; and the moment the mother comes into possession the trust will be executed in accordance with the intention of the testator.  The mother will hold and possess for her child as natural tutrix, not as trustee under the will; and she will be responsible for the property and effects, not as trustee under the appointment of the testator, but as natural tutrix under the law.

It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it relates to the legacy of five thousand dollars, given to Margaret Lenora Echinger, the little daughter of Catherine Echinger, be affirmed.  That said judgment, in so far as it declares void the legacy given to Catherine Echinger, for the benefit of her little daughter, be avoided and reversed; and that the said legacy be recognized as valid and obligatory.  That the executors of the last will and testament of Hugh D. Cochrane be ordered to execute the same by delivering to Catherine Echinger, for the benefit of Margaret Lenora Echinger, her little daughter, the furniture and effects given by the said will to the said Mrs. Catherine Echinger for the benefit of her said child, according to the tenor and terms of the said will, and as therein set forth and described, and that the appellants in their capacity as executors pay the costs of this appeal.