PROVOSTY, J.
The following will of the de cujus is said to contain a substitution, and to be null:
“New Orleans, April 9, 1894.
“As I am about to leave the city for a short time, I have concluded in the event of accident to make this my olographic will:
“I appoint without bond as my executors *995 my faithful friends, Geo. W. Booth, Thos. McC. Hyman, and Isodore S. Richards.
“I bequeath to my daughter, Mattie May, whose mother was my first wife — Victoria N. Richards — and to my present wife: Mattie L. Cunningham, all of which I die possessed; they to share alike, i. e., one half to each, except I want enough reserved to support my mother during her life time. Should my wife die, I want her portion to go to my daughter, Mattie May. Should my daughter die, I want her share to go to my wife.
“My drug store, No. 93 Canal, I want sold to the best advantage without delay.
“I ask each of you three gentlemen to personally look after the comfort of my child.
“[Signed] Eugene May.”
This will is valid or not, according, to the interpretation that is placed upon the clause, “Should my daughter die, I want her portion to go tó my wife. Should my wife die, I want her share to go to my daughter.” If this clause is made to mean, “should my daughter,” or “should my wife, die before I do,” the will is valid. If it is made to read “at the death of my daughter” and “at the death of my wife,” the will contains a prohibited substitution, and is null. A provision by which a second legatee is to take at the death of the first is a substitution. Read this will and ponder over it as we may, and no answer comes to the question which of the above meanings was intended by the testator. From the opening sentence of the will one would infer that the instrument was merely intended as a temporary affair, to bridge over the short absence of the testator from the city; and from this a shrewd conjecture might be formed that the uncertain event with reference to which the testator used the subjunctive “should” was the death of that one of the two legatees who should die first; but this would be a mere conjecture, and might be wrong.
The proponents of the nullity assimilate the case to those where, as in the Harper Case, 2 La. Ann. 377, the legacy was to a second legatee in ease the first died without issue. But the cases are fundamentally different. In those cases the event on the happening of which the legacy was to pass to the second legatee was known. In the instant case the whole difficulty lies in the ascertainment of this event — whether it was to be the death of the testator himself or that of the legatee who should first die.
Finding no means of solving this doubt, the court must obey the injunction of article 1713, Civ. Code, and make the scales preponderate in favor of the validity of the will. Succession of Meunier, 52 La. Ann. 85, 26 South. 776, 48 L. R. A. 77.
The nullity of the will is asked on the further ground that the legacy to the wife exceeds the legitime. This is ground for reduction, not for nullity (Civ. Code, art. 1752; Gueydan v. Montagne [La.] 33 South. 61[1]), and the judgment of the district court made the proper reduction. But it is contended that, the prayer being only for nullity, and there being no prayer for reduction, the court cannot decree reduction, but must reject the demand entirely. On the principle that the greater includes the less, reduction may be decreed under the prayer for nullity. Gueydan v. Montagne, supra.
The judgment appealed from is affirmed.

 Ante, p. 38.