(106 So. 833)

No. 27033.

## SWART et al. v. LANE et al.

(Jan. 4, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Wills** ⟨⟩555(1)—**Will not annulled unless prohibited substitution therein is clearly expressed, or where will cannot be maintained without departing from its true significance.**

In view of Civ. Code arts. 1712, 1713, governing interpretation of wills, a will is not annulled on ground that it contains a prohibited substitution, except where prohibited substitution is clearly expressed or language used is so involved in doubt as to render it impossible to maintain will without departing from true significance of its language.

2. **Wills** ⟨⟩446—**Under will susceptible to two constructions, construction making it valid adopted.**

If will can be equally construed as either containing or not containing a prohibited substitution, under Civ. Code arts. 1712, 1713, court is compelled to adopt construction making will valid.

3. **Wills** ⟨⟩555(2)—**Will held not to contain prohibited substitution.**

Where will bequeathed property to testatrix's child, and "in case of my child's death as well as my own" to husband, *held,* that, intention of testatrix was to give estate to husband if death of child preceded that of testatrix, and hence there was no prohibited substitution but a vulgar substitution, which is permissible and does not invalidate the will under Civ. Code art. 1521.

Appeal from Nineteenth Judicial District Court, Parish of East Baton Rouge; W. Carruth Jones, Judge.

Suit by Nicholas Swart and others against Carlyle A. Lane and others. From a judgment rejecting plaintiffs' demand on an exception of no cause of action, plaintiffs appeal. Affirmed.

Charles A. Holcombe and C. C. Bird, both of Baton Rouge, for appellants.

Cross & Moyse, of Baton Rouge, for appellees.

THOMPSON, J. This is a suit by three brothers against the husband of their deceased sister.

The object of the suit is to annul an olographic will executed by the sister primarily in favor of her child and secondarily in favor of her husband.

The will is dated July 24, 1924, and reads as follows:

"In case of my death, I will and bequeath to my child all that I own, all my real estate and all my personal property. I appoint my husband, Carlyle Lane its guardian."

"In case of my child's death as well as my own, I will and bequeath to my husband, Carlyle A. Lane all my real estate, all my personal property, all that I own, with the exception of my two diamond rings one I will and bequeath to Mary Louise Swart, the other to Alice Hickman Swart, both being daughters of William Swart."

The nullity propounded against the will is that it contains a prohibited substitution; that is to say, that the entire estate is bequeathed first to the testatrix's child and then at the death of the child to the testatrix's husband.

It is the peculiar and unusual phraseology of the second clause of the will that gives rise to the contention that the will contains a prohibited substitution, and it must be admitted that there is some basis for two different interpretations.

It may be well to observe in this connection that one of the cardinal rules laid down by the Code, and uniformly recognized by jurisprudence in construing and interpreting a last will, is to ascertain the intention of the testator, if that can be done "without departing, * * * from the proper signification of the terms of the testament." C. C. art. 1712.

And another rule is that a disposition must be understood in the sense in which it can have effect, rather than that in which it can have none. C. C. art. 1713.

In the case of New Orleans v. Hardie, 43 La. Ann. 251, 9 So. 12, it was said:

"In the interpretation of wills the intention of the testator is the polar star by which the courts must be guided. It is their duty to realize such intention from quod voluit by ascertaining quod dixit."

And in Succession of Meunier, 52 La. Ann. 79, 26 So. 776, 48 L. R. A. 77, it was said:

"Where a bequest in a will, in one view, is illegal, in another view, lawful, the latter will be adopted and the will sustained.

"To fall, this legacy must come clearly within the scope of one or the other of these prohibitions, for the law and the courts lean to the upholding of the dispositions made by testators of their estates."

This well established rule has never been departed from so far as we are informed.

[1] No will has ever been annulled on the ground that it contained a prohibited substitution, except when such substitution was clearly expressed, or where the language used by the testator was so much involved in doubt as to render it impossible for the court to maintain the will without departing from the true significance of the language of the will.

If the will in the instant case can be interpreted only as giving the estate to the child during its life and after its death, said death occurring after that of the testator, the estate is to go to the husband of the testatrix, then it is clear the will cannot be maintained.

On the other hand, if it can be reasonably construed as showing the intention of the testatrix to give the estate to the husband in the event that the death of the child preceded that of the testatrix, then there is obviously no prohibited substitution, but a vulgar substitution, which is permissible and does not invalidate the will under article 1521, C. C.

[2] But if it can be said that the will is equally and easily susceptible of either of the two interpretations, the one making it valid and the other making it a prohibited substitution, we would under the law be compelled to adopt the one which would save the life of the will rather than the one which would strike it down.

"The scale hanging even between these two interpretations, it is made to preponderate in favor of the validity of the will." Succession of May, 109 La. 994, 34 So. 52.

[3] It appears from the petition that at the time the will was written the testatrix was in an advanced state of pregnancy. She expected soon to become a mother. The child was born some 44 days after the date of the will, but lived only a few hours. The child's death was followed in a few hours by the death of the mother.

There is no doubt that this serious and important event in her life—the birth of a child who was to become her heir—weighed upon the mind of the testatrix and furnished one if not the main motive for making the will. She was aware of the great danger attending such an event, and realized, no doubt, the possibility of not surviving the ordeal.

In the event of her own death and the survival of her child, she unquestionably wanted all of her property to go to the child. This intent is clearly expressed in the first clause of the will. In writing the second provision in the will we are strongly impressed with the fact that the testatrix realized the possibility of the death of her child occurring coincident with or preceding her own death, in which event she desired the property to go to her husband. This intent on the part of the testatrix we think, if not clearly expressed, is fairly deducible from the language used, supported as it is by the circumstances and conditions under which the will was made.

The language is, "in case of my child's death, as well as my own, I will and bequeath to my husband, etc."

From this verbiage it may be fairly assumed that the testatrix had in mind the death of her child before or contemporaneously with her own death, and it was this contingency that caused her to provide that the property should go to her husband. In making that disposition she did not anticipate that she would be survived by the child. She had already fully provided for that situation by giving the child all of her property. It is not to be presumed, and the will certainly does not indicate, any intention of the testatrix to give to the husband only in the event the child survived the mother.

Such a provision would have been a prohibited substitution pure and simple, and, moreover, would have been utterly useless, since the father would have succeeded to the estate of the child at its death without children of its own body.

Our conclusion is that the will is not null as containing a prohibited substitution, but, on the contrary, that the disposition in favor of the husband contemplated and intended to provide for the condition which actually happened—the death of the child before that of the mother.

This will is quite similar to the one under consideration in the Succession of Cochrane, 29 La. Ann. 232, except that the disposition in the instant will is more readily and easily interpreted against a prohibited substitution than was the one which was held not to contain a prohibited substitution in the cited case.

In that case $5,000 was given to Catherine Echinger to be invested in such a way that she might receive the interest annually and the principal at her becoming of age.

"In event of her death, the said donation to go to the daughter of my niece, maiden name Margaret Kellogg now living in Evansville, Indiana."

The court found no semblance of a substitution in the provision quoted, but construed the language, "in the event of her death," as meaning the death of the legatee prior to the death of the testator.

"In fixing the period which we must suppose was in the mind of the testator, it is as easy, as reasonable, as natural to say, that he means 'in the event of her death before my death,' as to say, 'in the event of her death before majority' or at any time, happen when it may."

So in the instant case it is just as easy, as reasonable, and as natural to say that the testatrix, in writing the disposition "in case of my child's death, as well as my own," meant in case of the child's death before the testatrix's death, as it is to say that the testatrix meant in case of the child's death after her own the property should go to the husband.

If we should eliminate from consideration the words "as well as my own," the will

would read in case of my child's death, I will, etc., practically the same verbiage as the will in the Cochrane Case, supra, which was held not to constitute a substitution. The words "as well as my own" in our opinion therefore add emphasis to the interpretation we have given the will and render the provision less doubtful than did the language of the will in the Cochrane Case.

The judgment appealed from rejected the plaintiff's demand on an exception of no cause of action. We think that judgment correct; and it is affirmed.

O'NIELL, C. J., concurs in the decree.