SAMUEL, Judge.
Mrs. Susie Bonvillian, wife of Arthur Blue, died in New Orleans on June 14, 1958. She left no forced heirs and was survived by two sisters and her husband. Her entire estate consisted of one-half of the community property acquired during her one marriage, the total thereof being appraised at $104,534.83 with the decedent’s interest amounting to $52,267.43. The larger part of this property stood in the name of the wife alone or in the joint names of husband and wife.
The decedent left two wills, both of which have been probated. The first, dated May 4, 1955, and in statutory form (LSA-R.S. 9:2442), bequeathed all of her property to her husband, named him executor and named an attorney and notary for the succession. The second will, in olo-graphic form, reads as follows:
*196 “February 8, 1958
“To whom it may concern I Susie Bonvillian Blue Being in the full majority of age. Do make this my last Will and Testament. I Will my undivided half of my Estate or property both real and personal. My Two sisters.
Mrs. Lee Etta Ogden, and Miss Lillian Bonvillian
Mrs. Susie Bonvillian Blue”
Since the second testament does not in express manner revoke the first, it is clear under LSA-Civil Code Art. 1693, and the litigants concede, that the appointments of the executor, attorney and notary in the statutory testament remain binding. Only the disposition of decedent’s property has been changed and this disposition is controlled by the second, or olographic, testament.
The two sisters have brought this declaratory action against the husband seeking a judgment decreeing that the decedent has left her entire estate to them. The defendant contends that the decedent has left only one-half of her estate to petitioners and that he is entitled to the other half because that other half has not been disposed of, and the bequest to him in the first will has not been revoked or affected, by the second will (LSA-Civil Code Art. 1693) or, alternatively, because he is entitled thereto as the intestate heir under LSA-Civil Code Art. 915.
The trial court decreed that the sisters had been left, by the second will, an undivided one-half of the decedent’s estate, that is, a one-fourth interest in the property belonging to the community formerly existing between the decedent and her husband, and that the husband had been left, by the first will as modified by the second, the other undivided one-half of decedent’s estate, that is, a similar one-fourth interest in said community property. From this judgment the sisters have appealed.
There is only one question before this court. What is the meaning of that portion of the olographic will which reads “I Will my undivided half of my Estate or property both real and personal.” ?
The record contains no evidence of any facts or circumstances, other than the wills themselves, which might aid in the discovery of the testatrix’s intention.
Appellants contend that the proper interpretation of the words “my undivided half” is to treat them as a specific reference to the testatrix’s full share in the community, for she was evidently informed (there is no proof offered to this effect) that the interest of each spouse therein was an “undivided half” and when she went on to say “of my Estate or property both real and personal” she meant community property, most of which stood in her sole name or in the joint names of herself and her husband. This could be comparable to a candy bar being divided in half and given to two children, one-half to each, with one giving her share to another child saying, “Here, you can have my half”, meaning the entire portion received by the giving child. They also argue that if she had wished her share of the community divided between the sisters and the husband she would have mentioned his name in the olo-graphic will and that the omission of his name indicates a deliberate intent that he not share at all in her estate.
The function of the court is to construe the will as written, to interpret what the testatrix said, not what we think she meant to say, and to give effect only to the express and not to the conjectural or probable intention of the testatrix. Succession of Montegut, 217 La. 1023, 47 So.2d 898; Succession of Price, 202 La. 842, 13 So.2d 240. We must give effect only to' what is indicated by the language used in the will and restrict ourselves to this language itself when the intention of the testatrix can be ascertained therefrom. LSA-Civil Code Arts. 1712, 1715; Succession of Simo, 205 La. 592, 17 So.2d 889.
We are of the opinion that the testatrix’s intention can be ascertained from the lan *197 guage or terms contained in the will. Despite the apparent fact that she was a person of little education, the words used by her are sufficiently clear. She wrote “I Will my undivided half of my Estate or property both real and personal.”. The only word appearing in the above quoted clause which might have the effect of making the same ambiguous is the first possessive pronoun “my” which appears between “I Will” and “undivided”. But this pronoun is correctly used because the testatrix, at the time she wrote the will, actually owned an undivided half, as well as the whole,, of her estate or property. It is as proper and correct as the same pronoun which is again used as the seventh word in the clause, between “of” and “Estate”, for both are equally possessive and apply to the writer of the testament. On the other hand, the words “my estate or property” can have only one meaning and quite clearly indicate only one thing. They refer to the estate or property of the testatrix and not to the property belonging to the community between herself and her husband. They mean and indicate not the community’s property but hers, which in this case happens to be one-half of the community and no other. Regardless of any alleged intention of the testatrix to do otherwise, the olographic will disposes of half of the property belonging to the testatrix and this, in turn, is one-quarter of the property belonging to the community. We must interpret what she actually said and not what we may think she meant to say. Perhaps the testatrix’s expression would seem unusual to lawyers because of the very common use, in legal matters, of the same thought expressed with the use of the word “an” instead of the first “my”, so as to read “I will an undivided half of my estate or property”. Both expressions have a similar meaning and certainly no one should be penalized because the testatrix used something other than the customary legal phraseology. Thus we are able to conform closely to the words used by the testatrix, to retain and make use of all of those words, and to avoid the speculation urged by the petitioners.
It is pertinent to say that if we had not been able to ascertain the true intention of the testatrix, if this intention was doubtful, the best result we could even then accord the contentions of the sisters, we would still arrive at the same conclusion reached herein. For the bequest being either of all the decedent’s estate or of one-half thereof, the latter must prevail under LSA-Civil Code Art. 1717, which provides:
“If it can not be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least.”
. For the reasons assigned the judgment appealed from is affirmed, costs to be paid by appellants.
Affirmed.