262 So.2d 46 (1972)
Succession of Hermina MARTEL, widow of Fred R. MARTIN, Jr.
No. 8779.
Court of Appeal of Louisiana, First Circuit.
April 17, 1972.
Rehearing Denied May 29, 1972.
Writ Refused June 30, 1972.
Earl H. Willis (Willis & Hardy), St. Martinville, for appellant.
G. Edward Merritt (Terriberry, Carroll, Yancey & Farrell), New Orleans, for appellee.
Before LANDRY, BLANCHE and TUCKER, JJ.
LANDRY, Judge.
J. Gabriel Martel and thirty other parties (Martel Heirs), legal heirs of decedent-testatrix Hermina Martel Martin (Testatrix), appeal the decree of the trial court rendered in a Declaratory Judgment Action brought by Testatrix's executor, Taylor *47 Caffery, interpreting Testatrix's will as having made certain specific bequests to Mrs. Emmadel Pecot Berry and the remainder of Testatrix's estate to Mrs. Mary Thomas Martin. The Martel Heirs contend the trial court erred in failing to find that the will, in olographic form, contained a legacy contingent upon the happening of an uncertain event which did not occur. Appellants also maintain the trial court erred in applying the interpretative authority contained in LSA-C.C. art. 1713, notwithstanding the will is free of ambiguity. The Martel Heirs further contend the trial court erred in reading words out of the will, and holding that the presumption of testacy prevails over the clear language of the testament. We reverse and render judgment in favor of the Martel Heirs.
The facts are simple and undisputed. The transcript of evidence consists solely of the will and a stipulation to the effect that Testatrix died on August 23, 1967, having survived her husband, Fred R. Martin, Jr., who died March 3, 1966, almost one and one-half years before the death of Testatrix.
Subject testament, dated September 1, 1961, reads in full as follows:
"New Orleans, La.
Sept. 1, 1961
This is my last will and testament. I revoke any and all wills previously made by me.
I leave to my husband, Fred R. Martin, all of my community property and separate property. This to include not only wells drilled and opened at this time of my death, but also those which may be discovered or opened after my death.
In the event that my husband and I should pass away at the same time, I wish the above mentioned property to go to Mrs. Mary Thomas Martin of Columbia, S. C. at 830 Gregg Street, with the exception of my console, family portraits and ring, which will go to Mrs. Emmadel Pecot Berry of Covington, La.
I appoint my husband executor with seizin and without bond. In the event he should predecease me, then I appoint Taylor Caffery as executor under the same circumstances.
Hermina Martel Martin."
The action brought by Executor sought a judgment declaring whether testatrix intended the bequests would accrue to her named legatees in the event Testatrix's husband predeceased her, or whether Testatrix intended the legatees take only if Testatrix and her husband died at the same time as the will expressly provides. Should the first interpretation prevail, legatees would inherit Testatrix's succession. If the second interpretation be deemed Testatrix's intent, the legacies would be held to have lapsed and the Martel Heirs would be called to Testatrix's succession pursuant to the rules governing intestate successions.
The cardinal rule applicable to the interpretation of a will is that the intention of the testator is to be given effect. Swart v. Lane, 160 La. 217, 106 So. 833; Succession of LaBarre, 179 La. 45, 153 So. 15.
When a will is subject to different interpretations, the courts will adopt that construction which will render the testament valid, since, under our law, all testaments carry a strong presumption of validity. LSA-C.C. art. 1713; Swart v. Lane, supra; Succession of May, 109 La. 994, 34 So. 52.
Our rules governing testamentary interpretation also provide that the testator's intent must be determined without departing from the terms of the will. LSA-C.C. art. 1712; Delaureal v. Rouget's Succession, 177 La. 815, 149 So. 464; Succession of Cunningham, 142 La. 701, 77 So. 506.
Also applicable herein is the well established rule that the intent of the testator *48 is controlling, and where the language of the testament is clear and unambiguous, forced interpretations are not permissible. Succession of Stallings, 197 La. 449, 1 So. 2d 690.
In determining a testator's intent, the whole of the will must be considered and every word given effect. What is stated in one part of a will may be called upon to explain what is meant in another part which is uncertain or unclear. Succession of Price, 202 La. 842, 13 So.2d 240.
In the interpretation of wills, the court must interpret the will as written and give effect to what the testator said, not what the court thinks the testator intended to say. In such instances, the express and not the probable intent of the testator must be determined by the court. Succession of Jarreau v. Succession of Jarreau, La.App., 184 So.2d 762; Succession of Blue, La. App., 126 So.2d 195.
Legatees contend, and the lower court so held, that applying the strong presumption of testacy afforded by LSA-C.C. art. 1713, leads to the conclusion that Testatrix intended a vulgar substitution in that she meant for legatees to take the succession in the event Testatrix's husband preceded her in death. Legatees further contend that the fact that Testatrix did not alter her will in the year and one-half interval Testatrix lived following her husband's demise, is indicative of her intent that legatees take the estate upon the husband's prior death.
On the other hand, the Martel Heirs argue the provisions of the will clearly provide that legatees take only in the event Testatrix and her husband die at the same time. This condition, according to the Martel Heirs, is unambiguous in that it unmistakably conditions the bequests to legatees upon the occurrence of an uncertain event which did not transpire, consequently, the legacies fall. Lastly, the Martel Heirs contend the judgment of the trial court reads out of the will the words "In the event that my husband and I should pass away at the same time ...", and substitutes in lieu thereof the phrase "should my husband predecease me", which latter phrase has an entirely different meaning.
In ruling in favor of testacy, the trial court relied primarily upon LSA-C.C. art. 1713, which provides that a testament must be construed in a sense which will give it effect rather than being given a meaning which will render it ineffective, and also upon Swart v. Lane, 160 La. 217, 106 So. 833.
Swart, above, involved a testament providing that testatrix's property should go to her child, and "in case of my child's death as well as my own", the estate was to go to testatrix's husband. In Swart, above, the court held that testatrix intended her estate should go to her husband in the event testatrix's child predeceased her, thereby constituting a vulgar substitution permissible under LSA-C.C. art. 1521. The court also concluded that the other possible construction, namely, that the child took the property which would go to the husband upon the child's death, would render the will null on the ground it contained a prohibited substitution.
We find persuasive authority for the position of the Martel Heirs exists in Succession of McAuley, 29 La.Ann. 33. McAuley, above concerned testamentary language naming a legatee "If I and my husband die during my trip from home." The contestators of the will in McAuley, above, urged that testatrix intended the legacy to be effective if testatrix should die during her and her husband's trip from home. In resolving the controversy, the court in McAuley, above, noted that the fundamental rule involved is that the testator's intent must be determined and given effect. The court concluded that the disputed words were intelligible as written and that it was not within the court's province to make a will for testatrix, but only to interpret the will as written. The court in McAuley further aptly recognized that it is "not for us to say that she meant otherwise, or that it *49 would have been more reasonable and proper to have made that contingency her own death only." In McAuley, the court finally concluded that since both testatrix and her husband did not die during their journey, the legacy lapsed for nonoccurrence of the event upon which it was conditioned.
The numerous cases cited by legatees are distinguishable in that they involved testaments containing ambiguous language subject to more than one construction.
Succession of Kamlade, 232 La. 275, 94 So.2d 257, concerned a will providing that one-half of decedent's estate would go to the "cousins" on his mother's side, and the other half to the "cousins" on his father's side. In Kamlade, the court concluded the word "cousins" referred to cousins of the nearest degree on each side of testator's family.
In Succession of Fertel, 208 La. 614, 23 So.2d 234, the court interpreted a bequest reading "Everything I possess, I leave the use of it to my husband during his life time, [and] at his death ... To my two daughters ... and my grandson...", to mean testatrix granted her husband usufruct of her property, and that she did not intend a prohibited substitution.
A bequest to testator's daughter, accompanied by the stipulation "in the event of my daughter's death" the property goes to someone else, was deemed in Succession of Cochrane, 29 La.Ann. 232, to be ambiguous, and held to mean that the bequest would go to the subsequently named party in the event testator's daughter predeceased him, and therefore did not constitute a prohibited substitution.
Succession of May, 109 La. 994, 34 So. 52, concerned a will leaving all of testator's property to his wife and daughter with the proviso "should my daughter die, I want her portion to go to my wife. Should my wife die, I want her share to go to my daughter." Finding testator's intent unclear, the court presumed he intended a valid bequest. On this basis, the court concluded testator referred to a situation in which either his daughter or wife predeceased him.
Swart v. Lane, above, involved ambiguous language which recited "in case of my child's death as well as my own" which was held by the court to contain a permissible vulgar substitution.
On the other hand, Testatrix's will is clear and free of ambiguity. The circumstance imposed as a condition precedent to legatees taking herein is explicit. Testatrix's will expressly states that legatees shall take her estate "In the event that my husband and I pass away at the same time...." To reach the result decreed below, it is necessary to change the words "In the event my husband and I pass away at the same time" to "In the event my husband should predecease me." This the courts cannot do because the courts cannot make wills for decedents. Succession of Price, 202 La. 842, 13 So.2d 240.
We find the wording of Testatrix's will clear, concise, explicit and unambiguous. They present no uncertainty and require no interpretation since they refer to a specific circumstance and have logical meaning just as they are. To hold as legatees urge necessitates a reading out of words contained in the will and substituting therefor language not employed by Testatrix. The court cannot put words in a testator's mouth. Succession of Price, supra; Maguire v. Maguire, 110 La. 279, 34 So. 443.
Legatees correctly contend that the whole of a will must be given consideration and every word given effect in the determination of testator's intent. Succession of Price, supra; Succession of Kamlade, supra. We find that application of this rule supports the decision reached herein. In the dispositive portion of her will, Testatrix stated legatees would take "In the event that my husband and I pass away at the *50 same time." However, in the concluding paragraph where she named her husband executor, she expressly stated that in the event her husband predecease her, she appointed someone else executor of her estate. We believe that had she intended the legacies to be effective upon her husband's predeceasing her, she would have employed the same precise language in writing the legacy as she did in the concluding paragraph which named her executor. She did not so choose. Instead she elected to utilize equally precise terminology indicating her intent that legatees would take if she and her husband passed away at the same time.
It is not within our province to say it would have been more practical or sensible for Testatrix to have provided that legatees would take her property if Testatrix's husband predeceased her. We hold, therefore, that the legacies lapsed because the conditions imposed thereon by the will did not occur. We find that the presumption against intestacy must yield to the facts of this particular case. It follows that the Martel Heirs are called to take decedent's estate according to the rules governing intestacy.
It is ordered, adjudged and decreed that the judgment of the trial court be reversed and set aside and judgment rendered herein in favor of the Martel Heirs and against legatees, Mary Thomas Martin and Emmadel Pecot Berry, declaring the bequests to said legatees in the will of decedent Hermina Martel Martin to have lapsed.
It is further ordered, adjudged and decreed that there be judgment herein in favor of appellants, the Martel Heirs, recognizing them as heirs at law of decedent Hermina Martel Martin, and, as such, entitled to be recognized as owners and sent in possession of decedent's estate, according to law. All costs of these proceedings to be paid out of the estate of Hermina Martel Martin.
Reversed and rendered.