332 So.2d 439 (1976)
Stephen L. CARTER et al.
v.
SUCCESSION of Orlando B. CARTER.
No. 57212.
Supreme Court of Louisiana.
May 17, 1976.
*440 Oliver P. Stockwell, William E. Shaddock, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, for defendant-applicant.
J. B. Jones, Jr., Jones, Jones & Alexander, Cameron, for plaintiffs-respondents.
SUMMERS, Justice.
Orlando B. Carter departed this life in Cameron Parish on November 28, 1973. He died without issue, never adopted anyone and left no ascendants. He was survived by his wife of many years, three brothers and three sisters. He left this last will and testament in olographic form:
 "Cameron, La.
 December 6, 1970
To whom this may concern:
I, Orlando B. Carter, being sound of mind and realizing the uncertainties of
life do hereby make this my last will and testament:
I do hereby bequeath unto my beloved wife, Tavia Rutherford Carter all of
my interest in our home place consisting of fifteen acres more or less.
I further bequeath all of my interest received as a legal heir from (my parents)
Selika P. Carter natural mother and S. O. Carter my natural father.
All cash, bonds, and other valuables I may possess at my death.
Thus done on the 6th day of December in the year of 1970 A.D.
 Orlando B. Carter"
The will was presented for probate by decedent's brothers and sisters, who alleged that they should be sent into possession in full ownership of his separate estate. These allegations are based upon the contention that the will makes no disposition of any property that formed a part of decedent's separate estate.
The surviving widow in community answered, alleging that she was entitled by law, and under the terms of decedent's last will and testament, to all of the property, rights and credits belonging to the community of acquets and gains formerly existing as a result of her marriage to decedent, and, under the terms of the will, to the *441 ownership and possession of all property belonging to decedent's separate estate.
The widow was appointed administratrix of the succession, and one of decedent's brothers and two sisters dismissed the claims previously filed by them in these succession proceedings. The remaining two brothers and one sister accepted decedent's succession, including any part accruing to them by virtue of the alleged renunciation of their brother and sisters. A motion for summary judgment, as amended, filed by the widow and her exception of no right or cause of action were referred to the merits. The issue thus presented was submitted for decision, it being stipulated that the controversy was to be decided by interpreting the will on its face without extraneous evidence.
The trial judge held that the testator bequeathed his entire estate to his wife. On appeal the Third Circuit reversed, holding that decedent failed to name any legatee to his separate estate and, therefore, other than the bequest to the widow of the home place, decedent died intestate. 321 So.2d 370. Certiorari was granted on the widow's application. 323 So.2d 804.
The question is, therefore, does the language of this testament constitute a bequest to the widow Tavia Rutherford Carter of decedent's entire estate, or is the failure to name a legatee after "I further bequeath" a manifestation of the testator's intention not to dispose of his separate estate by will.
Restated, the contention of the surviving widow is that under the terms of the will she is made the sole legatee of decedent's entire estate, including both his separate property and his half of the community. The brothers and sister contend, on the other hand, that decedent bequeathed to his wife only his interest in the home place and that he died intestate as to his separate estate and his share of the community property.
The brothers and sister argue that the failure of the testator to name a legatee or legatees after the words "I further bequeath" left the property received by the testator from his parents (his separate property) and his interest in all cash, bonds, and other valuables (community property) undisposed of. To hold otherwise, they contend, would require the court to name the legatee which it has no responsibility or authority to do.
Two articles of the Civil Code establish basic principles to be applied to the interpretation of wills:
Article 1712: "In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament."
Article 1713: "A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none."
Principally, courts must endeavor to ascertain the testator's intention. All other rules are only means to that end. Succession of La Barre, 179 La. 45, 153 So. 15 (1934); Succession of McBurney, 165 La. 357, 115 So. 618 (1928); Succession of Blakemore, 43 La.Ann. 845, 9 So. 496 (1891). The function of the court is to determine and carry out the intention of the testator if it can be ascertained from the language of the will. Succession of Wilcox, 165 La. 803, 116 So. 192 (1928).
"This intention must be ascertained from the whole will, and effect must be given to every part of the will as far as the law will permit. No part of a will should be rejected, except what the law makes it necessary to reject. Where it is a question of the choice between two interpretations, one of which will effectuate, and the other will defeat, a testator's intention, the court will carry out the intention of the testator.

*442 "There is also another rule which is invariably followed by the courts in interpreting a will; namely, that, if possible, the will should be read so as to lead to a testacy, not to an intestacy." Succession of La Barre, supra 179 La. at page 48, 153 So. at page 16.
In the absence of contrary expressions, the law presumes that when a will is executed the testator intends to dispose of his entire estate. Succession of Killingsworth, 292 So.2d 536 (La.1973); Succession of Montegut, 211 La. 112, 29 So.2d 583 (1947); Succession of Fertel, 208 La. 614, 23 So.2d 234 (1945). And the cases have recognized that in the interpretation of wills, the first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. The testator is not supposed to be propounding riddles, but rather to be conveying his ideas to the best of his ability so as to be correctly understood at first view. Succession of La Barre, supra; Succession of Bobb, 41 La.Ann. 247, 5 So. 757 (1889).
When the will in the case at bar is read with these principles serving as guides to its interpretation, the reader gains the impression that the testator intended to bequeath all things mentioned therein to his widow.
It is evident from a reading of the will that it was written by the testator without the aid of counsel. The law is indulgent in such cases. It exempts language from technical restraint and obeys the clear intention however informally conveyed. If obscurity arises from a lack of clear expression, it seeks the intention in a purpose, consistent and rational, rather than the reverse; and of two interpretations, it selects that which favors testacy. Succession of Fertel, 208 La. 614, 23 So.2d 234 (1945); Succession of Blackemore, 43 La.Ann. 845, 9 So. 496 (1891).
The brothers and sisters assert that the testator inadvertently omitted the names of legatees after the words, "I further bequeath". But such an omission may not be assumed. Only one legatee is named in the entire willthe testator's wife; and when the testator wrote "I further bequeath" we are of the opinion it was his intention to bequeath the property, rights and credits thereafter named to his wife as a further bequestjust as it is written. It would require a strained and unnatural interpretation to conclude that the testator declared that he further bequeathed all of his interest in his separate property, and all of the cash, bonds and other valuables he possessed but nevertheless failed to name the legatee or legatees who were to be the beneficiaries. Such a reading renders all stipulations after "I further bequeath" ineffective. Such a result is contrary to Article 1713 of the Civil Code directing that "a disposition must be understood in the sense in which it can have effect, rather than that in which it can have none."
A more plausible result requires that, since the testator had already named his wife as legatee, this "further" bequest was undoubtedly intended for her benefit. This interpretation gives meaning and effect to the expressed intention to "further bequeath" and to the presumption that the testator intended to dispose of his entire estate. Such a result gives effect to a meaning the will makes obviousonly one legatee is named, only one was intended.
It is also argued on behalf of the brothers and sister that the words "I further bequeath" begin a new paragraph; hence these words manifest the writer's intention to depart from the bequest to the wife contained in the preceding paragraph. Conceding for the purpose of argument that the testator adopted a flush-paragraphing style instead of indenting the first line of each paragraph as is more often the practice, the argument is nevertheless untenable. Attention to grammatical considerations would more readily favor construing the words "I further bequeath" as transition words, used to show continuity of the *443 comprehensive bequest to the wife begun in the preceding paragraph.
In concluding that the decedent intended to bequeath his entire estate to his wife, this Court is not adding the name of an omitted legatee as the brothers and sister contend. To the contrary, the holding is that the will named the legatee, and it should be understood as a bequest to the wife of decedent's entire estate.
For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside, and the judgment of the trial court is affirmed and made the judgment of this Court.