ESTATE OF RODERICK　　　\*　　　NO. 2023-CA-0391
ANDERSON RICK, SR.

　　　　　　　　　　　　　　\*

　　　　　　　　　　　　　　　　　COURT OF APPEAL

　　　　　　　　　　　　　　\*

　　　　　　　　　　　　　　　　　FOURTH CIRCUIT

　　　　　　　　　　　　　　\*

　　　　　　　　　　　　　　　　　STATE OF LOUISIANA

　　　　　　　　\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-03257, DIVISION "A"
Honorable Ellen M. Hazeur
\* \* \* \* \* \*
**Judge Nakisha Ervin-Knott**
\* \* \* \* \* \*
(Court composed of Chief Judge Terri F. Love, Judge Rosemary Ledet, Judge
Paula A. Brown, Judge Tiffany Gautier Chase, Judge Nakisha Ervin-Knott)

*LOVE, C.J., DISSENTS WITH REASONS*

Brad P. Scott
Anton Martynenko
Kameron P. Whitmeyer
SCOTT VICKNAIR, LLC
1321 Ochsner Blvd., Suite 100
Covington, Louisiana 70433

　　　COUNSEL FOR APPELLANT

A. Scott Tillery
Matt J. Tillery
TILLERY & TILLERY
701 Metairie Road, Suite 2A201
Metairie, Louisiana 70005

　　　COUNSEL FOR APPELLEE

　　　　　　　　　　　　　REVERSED AND REMANDED
　　　　　　　　　　　　　　February 5, 2024

Pamyla C. Rick ("Appellant") appeals the district court's judgment denying her Petition for Partial Possession of Judgment. For the following reasons, we reverse the district court's ruling and remand this matter for further proceedings.

**RELEVANT FACTUAL AND PROCEDURAL HISTORY**

Roderick Anderson Rick, Sr. (the "decedent") died on October 24, 2016. At the time of his death, he was married to Tresea Sandifer Rick ("Appellee") and had one son, Roderick Anderson Rick, Jr., from a previous marriage. On April 6, 2017, the decedent's son[1] filed a petition to the open the decedent's succession, alleging that his father had died intestate. However, on May 22, 2017, Appellee filed a Petition to Probate Olographic Testament. The testament, which was half-typed and half-handwritten, was executed on June 29, 2015. In it, the decedent left everything to his wife, Appellee. After a trial on the merits, the court denied Appellee's Petition to Probate Olographic Testament, finding that the instrument failed to conform with the requirements of Louisiana Civil Code article 1575. The court's judgment was rendered on November 2, 2017, and reduced to writing on January 24, 2018.

---

[1] Roderick Anderson Rick, Jr. died on April 29, 2022. His wife, Pamyla C. Rick, was substituted as the party plaintiff in this case.

Thereafter, on March 14, 2018, Appellee filed another Petition to Probate, File, and Execute Olographic Testament. This time, the instrument was a completely handwritten document that was executed on August 18, 2014. The document reads as follows:

8-18-14

If I don't make it through this open heat [sic] surgery I would like my wife Tresea have [sic] all my money in the bank [sic] this second open heart surgery that she had to see me go through by herself [sic] I want her to know how much I appreciate all the love I have for her being there for me [sic] she don't know her car was a gift. I want her to have the house to finish raising our grandchildren in it [sic]

I love my wife Tresea Sleates
Roderick A. Rick Sr.

This is the testament currently at issue. It is undisputed that the decedent wrote this document the night before he was to undergo an open-heart surgery. On July 19, 2019, Appellant filed a Petition for Partial Judgment of Possession, again alleging that the decedent had died intestate. Appellant argued that the August 2014 testament contained a suspensive condition that did not occur. Namely, the sentence "If I don't make it through this open hea[r]t surgery" is a suspensive condition and, because the decedent did survive the surgery, the testament is invalid.

On February 6, 2023, the district court held a contradictory hearing on the Petition for Partial Possession of Judgment. At the conclusion of the hearing, the district court found that the August 2014 testament did not contain a suspensive condition and denied the Petition for Partial Possession. The judgment was reduced to writing on March 15, 2023, and this suspensive appeal followed.

**ASSIGNMENTS OF ERROR**

Appellant assigns three assignments of error on appeal: (1) the district court erred as a matter of law by failing to follow the rules for testamentary

2

interpretation codified in La. C.C. arts. 1611-16; (2) the district court erred as both a matter of law and fact by reading into the testament an intent to favor Appellee; and (3) the district court erred as a matter of law by failing to give effect to each and every part of the will, specifically the first sentence. As all of these assignments relate to the district court's interpretation of the testament, we will address them simultaneously under one category.

## STANDARD OF REVIEW

In this case, the parties do not dispute the validity of the form of the August 2014 olographic will. The sole question in this case is whether the first portion of the testament constituted a suspensive condition, and the parties disagree as to the interpretation of this provision. Whether the language in a testament is ambiguous is a question of law that is reviewed *de novo*. *Succession of Foster*, 2019-0209, p. 8 (La. App. 4 Cir. 7/31/19), 363 So. 3d 505, 511. Under a *de novo* standard, the facts and evidence in the record are examined with no deference given to the trial court's judgment or reasons for judgment. *Cosey on Behalf of Hilliard v. Flight Academy of New Orleans, LLC*, 2019-0785, p. 3 (La. App. 4 Cir. 11/12/20), 365 So. 3d 76, 80 (quoting *Cutrone v. English Turn Prop. Owners Ass'n, Inc.*, 2019-0896, p. 10 (La. App. 4 Cir. 3/4/20), 293 So. 3d 1209, 1216).

## DISCUSSION

### *Interpretation of Testaments*

The rules governing the interpretation of testaments in Louisiana are longstanding. The most basic principle regarding the interpretation of a testament is that the intent of the testator controls its interpretation. La. C.C. art. 1611(A). However, when interpreting a testament, the reviewing court must determine the testator's intent without departing from the terms of the will. *Succession of Martin*,

3

262 So. 2d 46, 47 (La. App. 1st Cir. 1972) (citing *Delaureal v. Rouget's Succession*, 177 La. 815, 149 So. 464 (1933); *Succession of Cunningham*, 142 La. 701, 77 So. 506 (1918)). Further, "the court must interpret the will as written and give effect to what the testator said, not what the court thinks the testator intended to say." *Succession of Martin*, 262 So. 2d at 48. In other terms, "[i]f the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit." La. C.C. art. 1611(A). The court must determine the expressed intent in the document, not the probable intent. *Succession of Martin*, 262 So. 2d at 48 (citing *Succession of Jarreau v. Succession of Jarreau*, 184 So. 2d 762 (La. App. 3d Cir. 1966); *Succession of Blue*, 126 So. 2d 195 (La. App. 4th Cir. 1961)).

"It is a cardinal rule of testamentary construction that each and every part of the will shall be given effect; no word, phrase or clause shall be declared surplusage if it can be afforded a reasonable and legal interpretation." *Succession of Lambert*, 210 La. 636, 657, 28 So. 2d 1, 8 (1946). The decedent's intention as it is expressed in his will must govern the will's disposition. *Succession of Liner*, 2019-02011, p. 4 (La. 6/30/21), 320 So. 3d 1133, 1137 (citing *Soileau v. Ortego*, 189 La. 713, 718, 180 So. 496, 497 (1938)). The words in a testament should be interpreted using their popular and ordinary meaning. *Succession of Lambert*, 210 La. at 658, 28 So. 2d at 8. When interpreting a testament, a court must give great weight to the first and natural impression conveyed to mind after reading the will as a whole. *Carter v. Succession of Carter*, 332 So. 2d 439, 442 (La. 1976). Whenever possible, courts should interpret wills in a way that favors testacy over intestacy. *Id*. (quoting *Succession of La Barre*, 179 La. 45, 48, 153 So. 15, 16 (1934)). However, the application of this preference must be tailored to the facts of

4

the particular case and testament at issue. *See Succession of Martin*, 262 So. 2d at

50; *Succession of Merritt*, 581 So. 2d 728, 730 (La. App. 1st Cir. 1991).

### *The August 2014 Will*

The law is clear. The intent of the testator *as expressed within the four*

*corners of his testament* controls the disposition of his estate. The decedent's will

starts with the phrase, "If I don't make it through this open hea[r]t surgery . . . ."

This is a qualifying phrase that clarifies everything written after it and establishes a

suspensive condition. *See* La. C.C. art. 1767.[2]

At the hearing on this matter, the trial judge denied the petition for

possession and stated her reasons on the record:

> With respect to the will, the Court finds that the August 2014 will does not contain a suspensive condition, nor does the Court find it to be vague and/or ambiguous. **Although it's clear that the testator did, in fact, survive the open-heart surgery which he referenced in his olographic will**, the testator goes on to explain his intent for his bequest to Tresea Rick by stating that she had been there for him through both of his surgeries and that he wanted her to know how much he appreciated her.

(Emphasis added).

While we agree with the district court that the will is unambiguous, the

district court erred in finding that it did not contain a suspensive condition. The

language of the decedent's olographic will is clear—if the decedent did not survive

his 2014 open-heart surgery, then his wife was to inherit. Contrary to the

arguments presented on this appeal, there can be no other interpretation of that

statement. We find that this is a case wherein the district court disregarded the

plain language of the testament under the pretext of pursuing its spirit in

contravention of La. C.C. art. 1611.

---

[2] La. C.C. art. 1767 provides that a suspensive condition is an obligation that cannot be acted upon unless an uncertain, future event occurs.

Appellee directs our attention to *Carter* wherein the Louisiana Supreme Court held that the words in a will written by a layperson are not held to the same standard as those in a will drafted by an attorney. *See Carter*, 332 So. 2d at 442. The Supreme Court held that in such a case the law "exempts language from technical restraint and obeys the clear intention however informally conveyed." *Id.* However, *Carter* is distinguishable in that the will at issue in that case did not contain a suspensive condition. Rather, the issue in *Carter* was who would inherit the decedent's separate property because the will did not explicitly name a legatee for that portion of his estate.

The olographic will in *Carter* began with the decedent leaving all of his interest in the community to his wife. 332 So. 2d at 440. After doing so, the decedent wrote "I further bequeath" and disposed of his separate property. *Id.* However, he did not state who would get the separate property, and the decedent's siblings argued that they were entitled to the separate property as the intestate heirs. *Id.* at 440-41. In looking at the will in its entirety, the Supreme Court found that the decedent intended to leave everything named in the will to his wife. *Id.* at 442. Specifically, the Supreme Court found that the will had one legatee—the wife—and that the later dispositions were a further bequest as to what was to go to her. *Id.*

In the case at bar, the decedent's testament is not ambiguous as to the disposition of his estate. He states, in plain words, that his wife would inherit his property *if* he did not survive the open-heart surgery. There is nothing complicated or technical about the phrase such that the decedent, or any layperson, could not comprehend the meaning of the words written. Notably, the decedent mentions the

impending surgery twice in his one paragraph testament, giving further insight into his state of mind and concern about the procedure.

The Supreme Court in *Carter* held that a testator's intention must be ascertained from the whole will and that each and every part of the will should be given effect. *Carter*, 332 So. 2d at 441. Our reading of the decedent's will, which takes into account the entirety of the will, is consistent with the rules of interpretation established under our laws and in our jurisprudence. Our case involves an instance wherein the decedent wrote a will on the eve of a major surgery leaving all to his wife should he not survive that surgery. In fact, we find this case to be similar to the situation in *Succession of Martin*, wherein the decedent had placed a condition in her olographic will that the legatees would inherit if she and her husband passed away at the same time. 262 So. 2d at 47. However, the decedent survived her husband by over a year. *Id*. The legatees of the lapsed will argued before the First Circuit that the decedent had intended for them to inherit if her husband predeceased her. In finding that the will had lapsed, the First Circuit reasoned:

> We find the wording of Testatrix's will clear, concise, explicit and unambiguous. **They present no uncertainty and require no interpretation since they refer to a specific circumstance and have logical meaning just as they are. To hold as legatees urge necessitates a reading out of words contained in the will** and substituting therefor language not employed by Testatrix. The court cannot put words in a testator's mouth. . . . It is not within our province to say it would have been more practical or sensible for Testatrix to have provided that legatees would take her property if Testatrix's husband predeceased her. We hold, therefore, that the legacies lapsed because the conditions imposed thereon by the will did not occur. **We find that the presumption against intestacy must yield to the facts of this particular case**.

*Succession of Martin*, 262 So. 2d at 49-50 (internal citations omitted) (emphasis added). Similarly, Appellee is requesting that the Court strike out the plain

language used by the decedent, which goes against this state's long-standing rules of interpretation. No court should re-write the decedent's will or presume that the decedent did not understand what he wrote when the language used is explicit and clear. The court's job is to uphold the terms of the testament as written.

Appellee requests in her brief that, if we find that the will contains a suspensive condition, we do not apply that condition to the entirety of the will. Appellee contends that only the first provision of the will contains the suspensive condition and that the condition should not be applied to the later sentence that bequeaths the house to her. This argument is strikingly similar to the failed argument made in *Carter*, wherein the siblings of the decedent claimed that they were entitled to inherit the decedent's separate estate because he had failed to name a legatee in the later part of his will. Just like the Supreme Court in *Carter*, we give effect to the will as a whole and the natural impression conveyed from a first reading. To assume that the decedent placed a condition only on a portion of his property would lead to a strained and unnatural interpretation that does not comport with the long-standing principles of testament interpretation. *See Carter*, 332 So. 2d at 442.

## DECREE

For the foregoing reasons, we find that the district court erred as a matter of law in denying the Petition for Partial Possession and holding that the August 2014 will did not contain a suspensive condition. Therefore, we reverse the district court's judgment and remand this matter for further proceedings.

**REVERSED AND REMANDED**

8