ESTATE OF RODERICK
ANDERSON RICK, SR.

\*     2023-CA-0391

\*     COURT OF APPEAL

\*     FOURTH CIRCUIT

\*     STATE OF LOUISIANA

\*

\*

\* \* \* \* \* \* \*

*TFL*

**LOVE, C. J., DISSENTS WITH REASONS**

I respectfully dissent.

The majority properly notes that in accordance with La. C.C. art. 1611(A), the principal rule courts must follow in determining the interpretation of a testament is that the intent of the testator controls its interpretation. "The function of the court is to determine and carry out the intention of the testator if it can be ascertained from the language of the will." *Carter v. Succession of Carter*, 332 So.2d 439, 441 (La. 1976). All other rules are just a means for the courts to endeavor to ascertain the testator's intent. *Id.* As also referenced by the majority, "the first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight." *Id.*, 332 So.2d at 442. However, I reach a different result than the majority in applying these precepts to the present matter, and conclude that the decedent created a valid, enforceable will.

The rule that the testator's intent controls applies especially to olographic wills, such as in the present matter. *See Succession of Caillouet*, 2005-0957, p. 5 (La. App. 4 Cir. 6/14/06), 935 So.2d 713, 716, (finding that "[w]hen a testament is written in olographic form without the aid of counsel, the intention of the testator is to be given paramount importance."). The law is indulgent when interpreting a will written by a testator without the assistance of counsel. *Carter*, 332 So.2d at 442. "It

1

exempts language from technical restraint and obeys the clear intention however informally conveyed.  If obscurity arises from a lack of clear expression, it seeks the intention in a purpose, consistent and rational, rather than the reverse; and of two interpretations, it selects that which favors testacy." *Id.*

Here, the decedent's testament stated the following:

If I don't make it through this open hea[r]t surgery I would like my wife Tresea [sic] have all my money in the bank [sic] this [sic] second open heart surgery that she had to see me go through by herself [sic]  I want her to know how much I appreciate all the love I have for her being there for me [sic] she don't know her car [sic] was a gift.  I want her to have the house to finish raising our grandchildren in it [sic]
I love my wife Tresea Sleates<br>Roderick A. Rick, Sr.

The majority relies, in part, on *Succession of Martin*, 262 So.2d 46 (La. App. 1st Cir. 1972), to support its conclusion that the opening phrase, "[i]f I don't make it through this open hea[r]t surgery," clearly and unambiguously created a qualifying, suspensive condition in which the decedent's bequests to his wife were contingent on his death resulting exclusively from the open heart surgery.  However, I find *Succession of Martin* distinguishable from the present matter.

In *Succession of Martin*, 262 So.2d at 47, the testatrix's will included the following:

This is my last will and testament. I revoke any and all wills previously made by me.

I leave to my husband, Fred R. Martin, all of my community property and separate property. This to include not only wells drilled and opened at this time of my death, but also those which may be discovered or opened after my death.

In the event that my husband and I should pass away at the same time, I wish the above mentioned property to go to Mrs. Mary Thomas Martin of Columbia, S.C. at 830 Gregg Street, with the exception of my console, family portraits and ring, which will go to Mrs. Emmadel Pecot Berry of Covington, La.

I appoint my husband executor with seizin and without bond. In the event he should predecease me, then I appoint Taylor Caffery as executor under the same circumstances.

The husband predeceased the testatrix. The trial court rendered a judgment declaring that the specific bequests made to the named legatees, Mary Thomas Martin and Emmadel Pecot Berry accrued, notwithstanding the fact that the testatrix and her husband did not die at the same time as expressly provided for in the will. *Id.* at 46.

On appeal, the First Circuit reversed, finding that the wording of the testatrix's will was clear, concise, and created an explicit condition that the named legatees would inherit her property only if the husband predeceased the testatrix. *Id.* at 49. The decision explained that "the whole of the will must be considered" in determining the testator's intent, noting that "[w]hat is stated in one part of a will may be called on to explain what is meant in another part which is uncertain or unclear." *Id*. at 48. In its application of this rule, the decision reasoned that the testatrix's concluding paragraph wherein she stated that she would appoint someone else as the executor in the event her husband predeceased her further underscored her express intent that the named legatees would only inherit in the event the testatrix and the husband died at the same time. *Id.* at 50.[1] Therefore, the appellate court found that the presumption against intestacy had to yield to the facts presented. *Id.*

In contrast to *Succession of Martin*, the facts of the case *sub judice*, present no clear, unambiguous explicit intent that the decedent intended to create a qualifying condition for the wife to inherit. In reading the testament in its totality, the most pertinent part of the opening phrase is the verbiage "if I don't make it . . ." The "first and natural impression conveyed" by this terminology is that the decedent meant "if I die." All wills and testaments are made and executed in contemplation of death. Here, the fact that the decedent was facing the imminent threat of death

---

[1] In the will's paragraph preceding the bequests to the named legatees, the testatrix leaves all of her property to her husband. *See Succession of Martin*, 262 So.2d at 47. In reading the testatrix's will in its totality, the initial bequest to the husband showed the testatrix's intent to predicate any inheritance by the named legatees on the condition that the testatrix and the husband died at the same time. As discussed further herein, in the instant case, no such clear intent to create a suspensive condition was manifested.

from a specific cause-—the open heart surgery—places no qualifying limitations on his expressed intent for his wife to inherit upon his death. Moreover, unlike *Martin*, the testament, when read in its totality, supplies no underlying basis to demonstrate the decedent's intent to impose a qualifying condition, other than death, for his wife to inherit. As such, I find the majority's conclusion that the decedent created an unambiguous suspensive condition wherein the wife's inheritance was contingent upon his death resulting solely from open heart surgery clashes with the decedent's clear intent as relayed in the remainder of the will. Indeed, the remainder of the will unambiguously expresses the reasons why he wanted his wife to inherit upon his death—her continued love and support.

In conjunction with the principal rule that a court should ascertain the testator's intent, another rule courts follow in the interpretation of wills is that a will should be read, if possible, to lead to testacy, rather than intestacy. *Carter*, 332 So.2d at 442. Fundamental to our jurisprudence is that the law favors the validity of wills. *Succession of Enos*, 2020-329, p. 3 (La. App. 3 Cir. 12/16/20), 310 So.3d 236, 239. This principle was explained in *Enos*, 2020-329, pp. 3-4, 310 So.3d at 239, as follows:

> The Supreme Court has given conciseness and native logic to this basic principle that the law favors the validity of will:
>
> > To wrest a man's property from the person to whom he has given it, and divert it to others to whom he has desired to withhold it, is a most violent injustice amounting to nothing less than postmortem robbery, which no Court should sanction unless thoroughly satisfied that the testator was legally incapable of making a will.
>
> *Kingsbury v. Whitaker*, 32 La. Ann. 1055, 1062; *McCarty v. Trichel*, 217 La. 444, [454], 46 So.2d 621, 624.
>
> *Gaudin*, 140 So.2d at 391.

Applying the rule that wills should be interpreted, if possible, to favor testacy and the principal rule that the intent of the testator is paramount in interpreting the

4

will, I find the opening phrase "[i]f I don't make it through this open hea[r]t surgery," did not create a clear, qualifying suspensive condition that invalidated the will because the decedent survived the open heart surgery. Instead, in reviewing the "four corners" of the testament, the decedent created a valid, olographic testament which expressed his clear intent to bequeath his property to his wife upon his death. Hence, the facts of this case mitigate in favor of the presumption against intestacy.

Based on the foregoing reasons, I respectfully dissent and would affirm the trial court's judgment denying Appellant's Petition for Partial Possession of Judgment.