366 So.2d 1065 (1979)
Succession of James Ware GARDINER.
No. 6774.
Court of Appeal of Louisiana, Third Circuit.
January 3, 1979.
Rehearing Denied February 6, 1979.
Writs Refused March 23, 1979.
*1066 Camp, Carmouche, Palmer, Barsh & Hunter, A. J. Gray, III, Lake Charles, for plaintiff-appellant.
Liskow & Lewis, Stephen T. Victory, Marilyn C. Maloney, J. Barnwell Phelps, New Orleans, Stockwell, Sievert, Viccellio, Clements & Shaddock, Oliver P. Stockwell, Richard E. Gerard, Edward D. Myrick, Gary A. Book, Reid K. Herbert, Lake Charles, William Booker Ferguson, Houston, Tex., Francis A. Dressler, Daniel K. Rester, Lake Charles, for defendant-appellee.
Before CULPEPPER, FORET and CUTRER, JJ.
CULPEPPER, Judge.
This is an action to annul a testament. The testament of James Ware Gardiner, a domiciliary of Connecticut at his death, was admitted to probate in that state. In an ancillary proceeding in Louisiana, the validity of the will was recognized insofar as it pertained to immovable property of the deceased located in Louisiana. The will provides that all of the immovable property owned by the deceased located outside of Connecticut, along with the remainder of his estate not otherwise disposed of in the will, shall make up the corpus of a trust. The trustees are bound to reserve the immovables as the last corpus asset to be alienated. Upon the death of the last income beneficiary of the trust, the ownership of the remaining corpus descends to the then living grandnephews of the deceased and to St. Patrick's Hospital in Lake Charles, the St. Joseph's Hospital in Connecticut, and Washington and Lee University in Virginia. The plaintiff, Katherine Garrison Brewer, a niece of the deceased, alleges the trust, as well as other provisions of the will affecting the disposal of the Louisiana property, are null and void under Louisiana law, and therefore the property should descend by the Louisiana laws of intestacy. The defendants, who include the executors, income beneficiaries, and the corpus beneficiaries, filed exceptions of no right of action and no cause of action. The trial court sustained these exceptions and dismissed the plaintiff's suit. From this judgment, the plaintiff appealed.
The issues before us are: (1) Does the plaintiff have a right of action? (2) Does the plaintiff allege a cause of action?
There are fundamental differences between the exception of no right of action and the exception of no cause of action. The exception of no right of action questions the right of the plaintiff to institute the suit, i. e., his interest in the subject matter of the proceeding and/or his capacity to sue. The exception of no cause of action questions the sufficiency in law of the petition and the exhibits attached thereto or made a part thereof. LSA-C.C.P. Articles 681 and 927; Hargroder v. Columbia Gulf Transmission Company, 290 So.2d 874 (La.1974); Parks v. Winnfield Life Insurance *1067 Company, 336 So.2d 1021 (3rd Cir. 1976). Evidence is admissible at the hearing of an exception of no right of action, but no evidence may be introduced to support or convert the objection that the petition fails to state a cause of action, the latter being triable entirely on the face of the petition, together with any documents made a part thereof. LSA-C.C.P. Article 931; Hargroder v. Columbia Gulf Transmission Company, supra; Parks v. Winnfield Life Insurance Company, supra.
Of particular application to the present proceedings is LSA-C.C.P. Article 2972, dealing with oppositions filed in succession proceedings. Comment (b) under that article states:
"(b) No person should be permitted to file an opposition in a succession proceeding unless he has a justiciable interest in doing so. The definition of this interest has been left for the determination of the courts' and the requirement has been stated only implicitly in the term "interested person.'"
NO RIGHT OF ACTION
In the case at bar, plaintiff alleges that she is a niece of the deceased, that there were no direct ascendants or descendants surviving at the death of the testator and that the plaintiff is therefore a legal heir and will inherit in the event of intestacy. No evidence was introduced at the trial of the exception of no right of action to contradict these allegations. Other possible legal heirs alleged are David L. Garrison, Jr., a nephew of the deceased, and Odille Gardiner, a half-sister of the deceased who has died since the death of the testator. They have been made parties to this suit upon the plaintiff's motion.
As a legal heir, the plaintiff would inherit, or share in the inheritance, if the will were declared null insofar as it affects the Louisiana immovable property. Under these circumstances, she has a right of action to contest the validity of the testament. Succession of Feitel, 187 La. 597, 175 So. 72 (La.1937); Succession of Wilson, 210 So.2d 602 (2d Cir. 1968).
NO CAUSE OF ACTION
The defendants contend plaintiff's petition states no cause of action because of two portions of article Fortieth of the testament. The first portion in question contains a penal clause and reads as follows:
"FORTIETH: If any devisee, legatee or beneficiary under this Will or any person claiming under or through any devisee, legatee or beneficiary or any person who would be entitled to share in my Estate through inheritance or intestate succession shall, in any manner whatsoever, directly or indirectly contest this will or attack, oppose or in any manner seek to impair or invalidate any provision hereof, or shall in any manner whatsoever conspire or cooperate with any person or persons attempting to do any of the acts or things aforesaid or shall acquiesce in or fail to oppose such proceedings, then in each of the above mentioned cases, I hereby bequeath to such person or persons the sum of One ($1.00) Dollar only, and all other bequests devises and interest in this Will given to such person and the spouse and/or issue of such person shall be deemed to have lapsed and shall become part of my Residuary Estate hereunder to be administered in accordance with the terms thereof."
The validity of such a clause in Louisiana has not been judicially determined with finality. Commentators have stated the governing statutory provision is LSA-C.C. Article 1519:
"In all dispositions inter vivos and mortis causa impossible conditions, those which are contrary to the laws or to morals, are reputed not written."
Oppenheim, 10 La.Civil Law Treatise, Sec. 129; Aubrey and Rau, Droit Civil Francais, Civil Law Translations 3, Section 692, p. 295; and Wood Brown, Provisions Forbidding Attack On A Will, 4 Tulane Law Review 421 (1929). Article 1519 is taken directly from the Code Napoleon and is found almost verbatim in nearly every civil law jurisdiction. Oppenheim, supra; and Brown, supra. The French solution is to *1068 look to the effect of the penal clause. Aubrey and Rau state the French rule:
"The penal clause . . . will be valid and obligatory if the purpose thereof is to insure the execution of dispositions that, containing nothing contrary to public order or good morals, would be susceptible of attack only for causes of private interests.. . . (Sec. 692, p. 296, supra)
Wood Brown, in 4 Tulane Law Review, 421, at 423, explains:
". . . where the principal dispositions of the will (those which it is forbidden the legatee or heir to attack) have nothing of public import in them, and where the right against which the penal clause operates is only of a private or pecuniary nature, the penalty is good and if an attack is made it will operate to divest the unfortunate litigant of his share. However, if the principal disposition is against good morals, then the penal clause automatically becomes against good morals also, since it is surely, so the commentators argue, to the public interest that such dispositions in wills be attacked."
One Louisiana case appears to favor the French rule. In Succession of Kern, 252 So.2d 507 (4th Cir. 1971), the testament contained a penalty clause that if it be challenged in "any way by any heir it becomes null and void and my entire estate is to be given to "The Crippled Children Hospital. . ."A nephew, not named in the will, attacked the disposition in favor of the hospital, contending they were prohibited substitutions. The court refused to uphold this type of penal clause but implied that a penal clause which is restricted to protest by a special legatee may be considered valid. The court stated:
"If the clause in question were restricted to protests or challenges by the legatees receiving a benefit from the will, there would be little problem in the absence of forced heirs. However, the clause in question prohibits protest by `any heir,' whether or not he is a party to the will or benefits thereby. Under the circumstances, the legatees are virtually helpless and at the mercy of any heir not mentioned in the will.

* * * * * *
"Such a provision is repugnant to law and good morals and cannot be sanctioned by the courts LSA-R.C.C. art. 1519."
We conclude it is unnecessary to decide the validity of the penal clause at issue here. Even assuming, as plaintiff contends, that the penalty clause is invalid, the effect of such a holding would be to strike the penalty clause from the testament, leaving the remainder of the will as written. Succession of Walters, 261 La. 59, 259 So.2d 12 (1972); Carter v. Succn. of Carter, 332 So.2d 439 (La.1976); and Succession of Burgess, 359 So.2d 1006 (4th Cir. 1978).
If we eliminate the penalty clause from the testament, this does not affect the validity of the second portion of article Fortieth which reads as follows:
"If as a result of any attack or contest of this Will an intestacy would otherwise result as to all or any portion of my estate, then in such event, with respect to any such portion of my estate, I hereby give, devise and bequeath such portion of my estate in equal shares to and among the charitable entities named as ultimate remaindermen of my Residuary Estate, excluding any persons and the spouse and ascendents and descendents of any persons attacking, contesting, opposing and/or cooperating or acquiescing in any such attack, contest or opposition. For the purpose of this article, an action for declaratory relief or for instructions or any similar action shall be deemed to constitute an attack upon this Will where the purpose of the institution of such action for declaratory relief or for instructions would be to oppose, impair or invalidate any provision hereof."
It is clear from this provision that even if the attack by plaintiff on the testament were upheld, any donations which are declared invalid would fall to the enumerated charities as residuary legatees. A testamentary provision for residual beneficiaries is not prohibited by Louisiana and is permissible. *1069 See the somewhat similar case of Succession of Feitel, supra, in which it was held that the opponent of the testament had no right of action since the nullity of the special legacies attacked would result only in their going to the residuary legatee, and not to the plaintiff in nullity.
This result is supported by the rule that in the interpretation of testaments the court must seek to carry out the intention of the testator. This intention must be ascertained from the will as a whole, and effect must be given to every part of the will insofar as the law will permit. Carter v. Succession of Carter, 332 So.2d 439 (La. 1976). Reading as a whole the testament in this case, it is clear the testator intended the charities to be residuary legatees, and that no part of his estate would descend by the laws of intestacy.
The plaintiffs argue the above quoted provision making the charities residuary legatees as to any invalid donations is inseparable from the "penalty clause" contained in the first sentence of article Fortieth. We find this contention without merit. From the language of the two provisions it is clear they are intended as alternatives. The purpose of the penalty clause is to ward off attack on the will by any legatee or heir. The purpose of the second provision of article Fortieth, quoted above, is to provide for the disposition of any invalid donations in the event an attack is made and is successful. This interpretation is required by the rule that the courts must endeavor to carry out the intention of the testator as ascertained from the will as a whole and must give effect to every part of the will as far as the law will permit. Carter v. Succession of Carter, supra.
We conclude that plaintiff has no cause of action to annul the testament at issue.
We are aware that paragraph 10 of plaintiff's original petition alleges "The decedent lacked testamentary capacity to execute a last will and testament, and, as such, said will is invalid in its entirety insofar as the same disposes of Louisiana property." On appeal, plaintiff makes no argument regarding these allegations. Even if plaintiff did contend she states a cause of action under this paragraph of her petition, the argument would be without merit. Our jurisprudence is settled that although an exception of no cause of action admits all well pleaded facts, it does not admit conclusions of law contained in the petition. State ex rel Garland v. Guillory, 184 La. 329, 166 So. 94 (1935); Ward v. Leche, 189 La. 113, 179 So.2d 52 (1938). The allegations of plaintiff's petition that the decedent lacked testamentary capacity, and that the will is therefore invalid are not well pleaded facts. This is simply a conclusion of law, and is not sufficient to state a cause of action.
Having concluded that plaintiff's petition fails to state a cause of action, it is unnecessary for us to decide the merits of the difficult questions raised by plaintiff with regard to whether the trust provisions contain prohibited substitutions or fidei commissa, whether the trust provisions violate laws dealing with the length of time immovables can be kept out of commerce and the rule that all beneficiaries of a mortis causa trust must be "in being" at the death of the testator, and whether certain provisions of the trust are invalid in granting too much discretion to the trustees in distributing the corpus and income of the trust. Like the trial judge, we do not reach a consideration of the merits of these questions.
For the reasons assigned, the judgment of the trial court is reversed and set aside insofar as it sustains the exception of no right of action. Otherwise, the judgment is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
REVERSED IN PART, AFFIRMED IN PART.