459 So.2d 758 (1984)
In re TUTORSHIP OF the Property of Matthew Ward WERLING.
No. CA-2253.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1984.
*759 William F. Bologna, Avery T. Waterman, Jr., McGlinchey, Stafford, Mintz, Cellini & Lang, P.C., New Orleans, for appellee.
Donald L. Foret, Lee R. Leonard, New Orleans, for appellant.
Before WILLIAMS and BYRNES, JJ., and L. JULIAN SAMUEL, Judge Pro Tem.
L. JULIAN SAMUEL, Judge Pro Tem.
This is an appeal from a judgment maintaining an exception of no right of action, and, on that ground, dismissing petitioner's suit in a tutorship proceeding.
The facts and the procedural background are unusual. Carl M. Werling, Jr., was shot and killed on January 9, 1983, by his wife, Cherie Ward Werling. Mrs. Werling was never prosecuted for the shooting.[1] Carl M. Werling, Jr., had been heavily insured. It is alleged that benefits of $2,000,000.00[2] were to be distributed to the primary beneficiary of several life insurance policies, Cherie W. Werling, the person who killed the insured. The secondary beneficiary was Carl and Cherie M. Werling's minor son, Matthew Ward Werling, whose property is the focus of these proceedings.
On January 10, 1984, plaintiff-appellant Frank Sloan petitioned the trial court to be appointed separate tutor of the property of Matthew Ward Werling. Alleging that he was a friend, professional associate and personal attorney to the late Carl M. Werling Jr., Sloan contended that under La.C. C.P. Art. 4069, a separate tutor of the property could and should be appointed in this "exceptional" case for good cause shown. Noting the possibility that Cherie W. Werling's killing of her husband might disqualify her as first named beneficiary on the insurance policies, Sloan argued that the minor's interests as second named beneficiary were in conflict with those of his mother and therefore required the protection of a separate tutor. He asked to be named the separate tutor since he had been respected and trusted by Matthew's father whom he had personally represented.
La.C.C.P. Art. 4069 provides:
In exceptional cases and for good cause shown, the court may appoint a bank or another person as administrator or tutor of the property of the minor. This appointment may be made upon the court's own motion or upon the motion of the tutor or other person entitled to the tutorship if no tutor has been previously appointed, or upon motion of any interested person after a contradictory hearing with the tutor, administrator or person *760 entitled to the tutorship or the administration.
If a person is appointed as tutor or administrator of the minor's property, that person shall furnish security as provided in Article 4131.
On January 29, 1984, Cherie W. Werling filed exceptions of improper venue, no right of action and no cause of action to Sloan's petition. Apparently before a hearing was held on the exceptions, Guaranty Income Life Insurance Company filed in Orleans Parish Civil District Court a petition to institute a concursus proceeding and deposited $500,000.00 of life insurance benefits (to be paid to Carl Werling's beneficiary) with the court. The insurance company expressed concern over the fact that the secondary beneficiary was a minor. The company requested that an attorney be appointed to determine and assert the minor's rights.[3]
On February 9, 1984, Mrs. Werling petitioned the 19th Judicial District Court in East Baton Rouge Parish to confirm her as natural tutrix of Matthew, to appoint Robert Ward (Matthew's maternal grandfather) as undertutor ad hoc and to appoint Jean (also spelled John in the petition) Barnett (a friend of the family and businessman) as separate tutor of the property of the minor; the mother noted the potentiality of the conflict of interests between herself and her son as first and second insurance beneficiaries as the reason for requesting a separate tutor for Matthew's property.
On February 14, 1984, Frank Sloan filed a supplemental petition in Orleans Parish Civil District Court asking in the alternative that another party such as Matthew's paternal grandmother, or a bank or other qualified person non-aligned with the interests of Cherie W. Werling, be appointed separate tutor of the minor's property in order to protect Matthew's interests. On February 27, 1984, following hearings on the exceptions, the trial court rendered judgment denying the exception of improper venue, maintaining the exception of no right of action, and dismissing the case.[4]
Sloan appealed from this judgment,[5] alleging as error that the district court dismissed his petition for appointment as separate tutor of Matthew Werling's property and, alternatively, that the district court failed to appoint Matthew's paternal grandmother or a bank or other party (not aligned with Cherie W. Werling's interests) as such separate tutor.
The brief[6] of appellee, Cherie W. Werling, asks that the trial court's findings to the effect that Frank Sloan was "properly not to be appointed separate tutor" of the minor's property and that Sloan "lacks standing to raise the issue of the appointment of a separate tutor" be affirmed. Alternatively, appellee asks that this court remand the matter of the exception of no right of action for further proceedings along with that of no cause of action.
The pivotal issue of whether Frank Sloan did indeed have standing is complicated by the fact that the no right of action exception itself, as well as the hearing and the trial court's decision on the matter, did not narrow the focus to only the standing question. The exception declared that Frank Sloan had no right of action since he represented creditors and other claimants, including himself, against the succession of *761 Carl M. Werling and had been in direct contact with insurance companies contesting coverage under life insurance policies naming Matthew Werling as secondary beneficiary. Mrs. Werling contended that Sloan's status as her husband's confidant did not entitle him to be appointed separate tutor of Matthew's property. The substantive allegations put before the court with the label of exception of no right of action clearly exceeded the scope of standing. In fact, the contentions focus more clearly upon the merits of the matter of Sloan's qualifications to be tutor, not upon whether Frank Sloan could petition the court that a separate tutor be appointed.[7] Similarly the focus at the hearing on the exceptions did not center upon the actual standing issue. The trial court stated that it would hold the venue issue and decide that later that day.[8] He then bifurcated the two issues of no cause of action and no right of action and heard the latter.
The evidence heard on the no right of action exception consisted totally of Sloan's testimony. It was adduced that Sloan had filed a claim for Thomas Wilson against Carl Werling's succession regarding a refund of attorney's fees, directed demand letters to the estate on behalf of Mr. and Mrs. Dupuis regarding settlement funds and even filed a personal claim. Sloan admitted that he had reviewed Carl Werling's client files after his death to determine whether there were prescription problems. He further stated that he had taken about six cases from those files in which he later represented the plaintiffs. Sloan agreed that he had a limited fiduciary responsibility to Carl Werling's estate after reviewing the decedent's client files, but felt that there was no ethical conflict in representing Werling's clients in claims against Werling's succession while he would be named Matthew Werling's tutor.
When Sloan attempted to establish his qualifications as a bona fide tutor, the trial court stopped him and asked how that testimony related to the no right of action exception. In reality, little of the previously given testimony related to Sloan's standing. The district court judge went on to correctly state that he was not interested in whether Sloan would make a bona fide tutor; the court was only interested in whether he had a right of action. The court then, however, went on to say: "I am interested in whether or not he has a conflict with the succession." The court did allow testimony as to a conflict between Frank Sloan as tutor for Matthew Werling and Carl Werling's estate.
At the conclusion of the hearings on the exceptions, the trial judge stated:
"Insofar as the question of no right of action is concerned, I believe that the plaintiff in this case is so unbelievably intertwined in the conflicts of interest insofar as this succession is concerned, that he has no right to pursue this matter whatsoever. I not only believe that there is a conflict of interest in the succession, I believe that the Mover in the case is the conflict in the succession. He himself is the conflict. And for that reason I am going to hold that he has no right of action whatsoever to bring these proceedings. And I am going to dismiss the proceeding."
Thus, although the trial court clearly ruled that Sloan had no right of action, the court's reasons indicate that the actual basis of the ruling was on the merits of the petition or possibly on the issue of no cause of action.[9]
*762 At the trial court level, there was no serious argument made as to whether Sloan had a right to file the petition for the appointment of a separate tutor. But in our view, the crux of this matter, and the only issues before us on this appeal, are whether Sloan had a cause of action and a right of action under La.C.C.P. Art. 4069.
In considering the exception of no cause of action,[10] it suffices to say that, accepting Sloan's allegations as true (as the court must), see Klein v. Recorder of Mortgages for Orleans Parish, 430 So.2d 1047 (La.App. 4th Cir.1983), the petition does state a cause of action.
The exception of no right of action is a more difficult matter. Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which is asserted. La.C. C.P. Art. 681. An exception of no right of action under La.C.C.P. Art. 927(5) raises the issue of whether the person has an interest in the subject matter of the proceedings. Bank of New Orleans and Trust Company v. Lambert, 409 So.2d 294 (La.App. 1st Cir.1981), writ denied 413 So.2d 494. It challenges the plaintiff's interest in the subject matter or his legal capacity to proceed with the suit. Marquis v. Cantu, 371 So.2d 1292 (La.App. 3rd Cir. 1979). The exception questions whether a remedy afforded by law can be invoked by the particular plaintiff; it relates specifically to the individual person.[11]Henry v. State through Department of Health and Human Resources, 435 So.2d 565 (La.App. 3rd Cir.1983), writ denied 441 So.2d 750 (La.1983). Whether a remedy afforded by law can be invoked by a particular plaintiff is at issue. Klein v. Recorder of Mortgages for Orleans Parish, supra; see also A. Copeland Enterprises, Inc. v. R. Jones Enterprises, Inc., 433 So.2d 1066 (La.App. 5th Cir.1982), writ denied 435 So.2d 426. The exception of no right of action is a threshold device to terminate a suit brought by one who has no interest in it, Stevens v. Board of Trustees of the Police Pension Fund of the City of Shreveport, 309 So.2d 144 (La.1975); it "cannot be utilized to determine whether defendant can stand in judgment, or to urge that plaintiff has no right simply because there is a valid defense ... Such a defense goes solely to the merits." (citations omitted) Steadman v. Sladovich, 430 So.2d 816, 818 (La.App. 5th Cir.1983). See also Morton v. Washington National Insurance Company, 420 So.2d 1019 (La.App. 5th Cir.1982).
Appellant contends that the trial court confused the issue of standing with the issue of his appointment as separate tutor. Although he argues that the allegations on the face of the petition were sufficient to demonstrate that he is an interested party, evidence supporting or controverting an exception of no right of action is admissible. La.C.C.P. Art. 931, Edwards v. Superior Coach Sales, Inc., 417 So.2d 1289 (La.App. 1st Cir.1982), writ denied 422 So.2d 423 (La.1983).
Thus, at the district court hearing properly held on the no right of action exception,[12] testimony was given by Frank Sloan. However, the questioning by attorneys for both sides during the hearing clearly shows that the evidence presented focused upon Sloan's qualifications as separate tutor in light of his conflicts with Carl Werling's succession. The testimony delved into Sloan's behavior in reviewing Werling's files and in representing Werling's *763 past clients even in suits against the Werling succession. The issue of Sloan's standing as an "interested party" with a right to bring the action was not actually reached. The trial court in its reasoning which led to the conclusion that Sloan had no right of action appears to have been considering only whether Sloan should have been the separate tutor. Contrary allegations do not support the maintaining of a no right of action exception; they are instead defenses which must be tried on the merits. Marquis v. Cantu, supra. The trial judge felt strongly that Sloan should not be named tutor because of his conflicts with the estate. That is a conclusion ultimately within the sound discretion of the trial judge. However, that conclusion does not answer and is not concerned with whether Sloan had a right of action under La.C.C.P. Art. 4069.
Mrs. Werling argues that even if the trial court had been confused as to the real issue of the hearing on the motion, this court should affirm the judgment since the record clearly indicates that Sloan lacked standing. We disagree.
Standing under La.C.C.P. Art. 4069 involves construction of the "interested person" language. There is scant jurisprudence construing Article 4069; two appellate opinions involve matters of curatorship in interdiction proceedings, which according to La.C.C.P. Art. 4550 are governed by Article 4069. In the case of In Re: Interdiction of Barnes, 182 So.2d 849 (La.App. 1st Cir.1965), an aunt petitioned the court seeking the interdiction of her nephew Aaron J. Barnes, III, and asking that she be named curatrix. Barnes' stepmother answered the petition alleging that no interdiction was necessary or, in the alternative, if the interdiction was granted, that a bank be appointed curator of the interdict's property. The trial court granted the interdiction, appointed the aunt curatrix of the interdict's person and a bank curator of his property. Based on the provisions of La.C. C.P. Art. 4069 (as that article was worded before the 1974 amendment), the aunt appealed. The First Circuit concluded the aunt possessed no unusual qualifications as a business manager, that the interdict himself had requested that a bank take care of his money and that there was a personality conflict[13] between the aunt and the stepmother who had a usufruct over the interdict's property. Since the two women would have been compelled to stay in constant contact if the aunt had been named curator of the interdict's property and since the interdict had expressed his own wishes in the matter, the judgment was affirmed.[14]
More enlightening on the standing issue is In Re Interdiction of Magee, 366 So.2d 204 (La.App. 2d Cir.1978). There the interdict's spouse as well as her grandson sought the appointment as curator of her property. The district court on its own motion appointed a bank due to the circumstances of the case. The spouse appealed and again questioned the grandson's standing as a party to the action since there was no actual blood relationship. The interdict had reared the grandson's father from birth and held him out to the world as her son. The grandson, if not related by blood, had even attended to many of the interdict's needs in the recent past. Stating that "[b]lood relationship is not a requirement..., 366 So.2d at 205," the Second Circuit concluded that the grandson's status as an interested person had been clearly established.
It would seem clear from the wording of the statute, as well as the case law, that the category of "interested persons" was not to be restricted to blood relatives. In brief, appellant Sloan argues that the fact that the court on its own motion may appoint a separate tutor provides no rationale *764 for applying stringent restrictions on the right of a person to petition the court. This reasoning may not be flawless, but it touches upon the principle that the articles of the Code of Civil Procedure are to be construed liberally and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves. La.C.C.P. Art. 5051. A liberal construction would appear most appropriate when the protection of the rights of a minor is involved in a tutorship proceeding.
A review of Louisiana statutes which similarly utilize the "interested person" wording discloses varying interpretations as to the standing requirement inherent in that statutory language. In some instances, the phrase is further explained in an official Revision Comment. The statement in La.C.C.P. Art. 3137 that "[a]ny interested person may traverse the descriptive list..." of a succession is explained to mean "any person whose rights might be prejudiced..." could traverse. The Louisiana Supreme Court has held that a surviving spouse was an interested person within the meaning of that statute. Succession of Smith, 247 La. 921, 175 So.2d 269 (1968). When faced with three grandchildren traversing the list and only one appealing, the Third Circuit stated that it was unnecessary for all three to file the motion since any interested person may do so. Succession of Amos, 422 So.2d 605 (La.App. 3rd Cir.1982). In Succession of Willis v. Martin, 228 So.2d 732 (La.App. 3rd Cir.1969), writ refused 255 La. 244, 230 So.2d 93, the Third Circuit rejected appellant's contention that only heirs and creditors could be considered "interested persons" under Article 3137. Utilizing the principle of liberal construction of procedural rules, that court held the vendees of an heir could also be considered interested parties.
La.C.C.P. Art. 2972 provides that the opposition of a party to a succession must allege the interest of the opponent in filing the opposition. Official Revision Comment (b) to that provision states that a person must have a "justiciable interest" in filing,[15] the "definition of this interest hav[ing] been stated only implicitly in the term `interested person.'"
When the "interested person" must have an actual or justiciable interest or must be adversely affected, the clear statutory language often so declares. See, e.g. La.C. C.P. Art. 1872; R.S. 30:12. Other statutes merely use the key wording and one must search for the intendment of the codal article. See, e.g., La.C.C.P. Art. 561[16] and, Art. 3607.[17]See also La.C.C.P. Art. 3111, Art. 3135, Art. 3305, Art. 3091, Art. 4070, and Art. 4549.
In a recent opinion dealing with the construction of La.R.S. 9:403 B,[18] which provides for the initiation of abandonment proceedings in juvenile court by an affidavit from an agency or an officer of the court, the First Circuit concluded: "The legislature, had it intended to allow private individuals to initiate abandonment proceedings, *765 could have done so by inserting `or other interested person or persons' into the statute." Wheat v. Street, 428 So.2d 930, 931 (La.App. 1st Cir.1983).
Certainly, it would appear that the intendment of La.C.C.P. Art. 4069 must be viewed in terms of the protection of the minor's property. The provision permits the appointment for good cause regardless of objection by the custodian of the minor's person even if the custodian is a natural tutrix.[19] Its language liberally construed according to common usage, La.C.C.P. Art. 5053 would seem to allow any individual who indeed had any interest in the minor or in the subject matter of the separate tutorship of the minor's property to have standing. After all, the only thing that the petitioner, the interested party in Article 4069, does is call to the court's attention the possible need for the appointment of a special tutor of the property of the minor, an appointment which the court may consider on its own motion.
The above is especially true here. As a personal friend, professional associate and personal attorney of the minor's father, Sloan clearly should not be disqualified as an "interested person." Indeed, there is nothing in the record of the trial court hearing to indicate that Mrs. Werling showed Sloan did not have standing as an interested person. The tutorship proceeding, unlike other court proceedings, does not present an action in which a plaintiff has an interest in enforcing judicially the right asserted, see e.g., Jefferson Bank and Trust Company v. National Gold Mining Company, Inc., 420 So.2d 997 (La. App. 5th Cir.1982), or in which a plaintiff belongs to the particular class of persons to which the law grants a remedy. Patterson v. Patterson, 436 So.2d 603 (La.App. 4th Cir.1983). Sloan's right to petition the court so that a separate tutor would be appointed to protect the interests of the child of a friend and colleague was not refuted at the hearing on this exception. And certainly, this is one of the "exceptional cases" referred to in Article 4069. The exception of no right of action should have been denied.
For the reasons assigned, the judgment appealed from is reversed, the exceptions of no cause of action and no right of action are denied, the case is remanded to the trial court, and the trial judge is directed to determine, after a hearing, whether a bank or another person should be appointed as tutor of the property of the minor in this case and, if he decides that such an appointment should be made, then to name and appoint such tutor.
REVERSED; REMANDED.
NOTES
[1] The couple, in the process of obtaining a divorce, were living apart. The issuance of a restraining order prohibiting either party from interfering with the other showed their strained relationship. Mrs. Werling's version of the shooting was that she shot her husband in self-defense as he attempted to attack her with a kitchen knife.
[2] There is some question as to the exact amount of insurance proceeds involved. $2,000,000.00 is a plaintiff-appellant allegation. In any event, it is undisputed that the insurance proceeds were very substantial.
[3] According to information related during oral argument before this court, a curator was appointed to represent Matthew in that proceeding. As a result of that proceeding, $150,000.00 was placed in a trust for Matthew with a bank named as trustee.
[4] There has been no appeal from the denial of the exception of improper venue, nor has there been an answer to this appeal regarding that denial.
[5] Sloan originally appealed suspensively. However, when the appeal bond of $750,000.00 was not filed timely, Mrs. Cherie Werling moved to dismiss the suspensive appeal. On June 29, 1984, this court granted the motion and maintained the appeal as devolutive.
[6] Additionally, Mrs. Werling filed a motion to strike Sloan's reply brief alleging that it attempts to divert this court from the legal issues with specious arguments. As we are cognizant of the issues herein, the motion is denied.
[7] Of course, Sloan's supplemental petition urging alternatively that Matthew's paternal grandmother or a bank or other person be appointed was not filed until after the exceptions had been filed.
[8] The trial court stated: "And I will either hear the No Right of Action now or I will decide the venue this afternoon. Because I think that I am going to decide that I have it."
[9] The trial court never actually ruled upon Cherie W. Werling's exception of no cause of action. In oral argument to this court her attorney contended that the district court's statement "And I am going to dismiss the proceeding," somehow included the exception of no cause of action.
[10] Courts are ex officio empowered to notice the failure to disclose a cause of action. La.C. C.P. Art. 927; Randall v. Jena Wire and Cable Co., 415 So.2d 564 (La.App. 3rd Cir.1982).
[11] It raises the question of whether the plaintiff has any interest in enforcing judicially the right asserted. Lambert v. Donald G. Lambert Construction Company, 370 So.2d 1254 (La.1979), whether the plaintiff belongs to that particular class to which law grants the remedy. Morton v. Washington National Insurance Company, 420 So.2d 1019 (La.App. 5th Cir.1982). See McMahon, Parties Litigant in Louisiana: The Exception of Want of Interest, 11 TUL.L.REV. 527 (1937).
[12] The issue of no right of action, unlike that of no cause of action, can be decided after a hearing in which evidence is presented. Klein v. Recorder of Mortgages for Orleans Parish, supra.
[13] The conflict between the aunt and the stepmother did not enter into the question of standing; it was rightfully part of the determination on the merits of the matteras to whether the aunt would be appointed curator.
[14] The standing of the aunt named curator of the person was never really an issue. The "interested person" wording was not construed; rather the language, "[i]n exceptional cases and for good cause shown," was the center of the focus.
[15] Legal heirs have been held to possess such an interest. Succession of Gardiner, 366 So.2d 1065 (La.App. 3rd Cir.1979), writ denied 369 So.2d 1154. A real interest is requisite. Succession of Kilpatrick, 356 So.2d 1083 (La.App. 2d Cir.1978), writ denied 359 So.2d 198 (La.1978).
[16] See Bolden v. Brazile, 172 So.2d 304 (La.App. 4th Cir.1965), which states that Texaco (a corporation being sued for the value of oil removed from land under leases from co-defendants claiming to be owners) was considered an interested person under La.C.C.P. Art. 561 which states that "any party or other interested person" could file a motion to dismiss a case as a result of abandonment.
[17] This article provides that "[a]n interested person may move for the dissolution or modification of a temporary restraining order or preliminary injunction ...." The Louisiana Supreme Court has also declared that "[a]n interested party has a right to appeal from an injunction judgment whether he was a party or not to the injunction suit." Cloud v. Bushnell, 168 So.2d 275 (La.App. 3rd Cir.1964), writ refused 247 La. 249, 170 So.2d 509 (1965).
[18] La.R.S. 9:403 B provides in pertinent part: "An affidavit may be made by an agency, or an officer of the court, before the judge or clerk of the juvenile court having jurisdiction over the child setting forth in general terms the facts constituting abandonment and the place or residence of the parent of the child if known to the deponent ...."
[19] In an article in the Louisiana Law Review, 1960 Amendment to the Civil Code Enacted in Connection with the New Code of Civil Procedure, co-authors Leon Sarpy and Adrian Duplantier declared:

"Article 4069 of the new Code is perhaps the most important of several changes designed to protect the minor's property, for which protection Louisiana has always been noted. Formerly, a bank could be appointed as separate tutor of the minor's property only with consent of the tutor of the person. The new provision permits the appointment for good cause, regardless of objection by the custodian of the minor's person, and even where there is a natural tutor." 21 La.L.Rev. 390 (1961).